UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>DEBORAH L. BOARDMAN<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7810<br>Fax: (410) 962-2577<br>MDD_DLBChambers@mdd.uscourts.gov |

July 8, 2020

LETTER TO THE PARTIES

RE:   *Charles B. v. Saul*
      Civil No. DLB-19-2624

Dear Plaintiff and Counsel:

On September 10, 2019, Plaintiff Charles B., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. ECF No. 1. This case is before me by consent of the parties. ECF Nos. 4, 9. I have considered Plaintiff's complaint and the Commissioner's motion for summary judgment.[1] ECF No. 1, 16. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed his claims for benefits on November 28, 2016, alleging a disability onset date of July 19, 2016. Administrative Transcript ("Tr.") 224-33. His claims were denied initially and on reconsideration. Tr. 142-47, 149-62. An Administrative Law Judge ("ALJ") held a hearing on October 23, 2018, at which Plaintiff was represented by counsel. Tr. 40-67. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 10-24. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "left shoulder surgery (status post rotator tear and bicep tear surgery and osteoarthritis), obesity, depression, and anxiety." Tr. 12. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

---

[1] After the Commissioner filed his motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising him of his opportunity to file a response and potential consequences of failing to oppose the dispositive motion. ECF No. 17. Plaintiff did not file a response.

*Charles B. v. Saul*
Civil No. DLB-19-2624
July 8, 2020
Page 2

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and less than 10 pounds frequently; he can stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day; he can occasionally stoop, kneel, crouch, and crawl, and he can climb frequently (except never requires the use of ladders, ropes, and scaffolds); he can perform jobs with occasional overhead, lateral, and front reaching with his left arm; he can perform jobs with frequent exposure to vibrations and hazards; he can perform jobs consisting of unskilled, routine, and repetitive tasks, involving only simple, work-related decisions, with only occasional changes in the routine work setting and only occasional interaction with supervisors, coworkers, and the public; and his time off task during the workday can be accommodated by normal breaks.

Tr. 16. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a material handler or electrician apprentice but could perform other jobs existing in significant numbers in the national economy. Tr. 22-23. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 23.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, the ALJ's decision applied the correct legal standards and its conclusions are supported by substantial evidence.

Before reviewing the ALJ's decision in Plaintiff's case, it is worth explaining that the standard of review in any Social Security appeals case is couched in federal statute and case law. Under 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." As explained by the Fourth Circuit:

> Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "Where

>conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). The issue before us, therefore, is not whether [Plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Coffman*, 829 F.2d at 517.

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, a court does not review the evidence afresh; rather, it reviews the decision of the ALJ and evaluates whether the ALJ's decision is supported by the record. *See Theresa S. v. Saul*, Civil No. TMD-18-2850, 2020 WL 433861, at *4 (D. Md. January 28, 2020) (explaining that a court will not review the evidence in a Social Security appeal *de novo*, "or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner").

In Plaintiff's case, the ALJ proceeded in accordance with applicable law. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (describing the SSA's five-step sequential evaluation for determining disability). The ALJ ruled in Plaintiff's favor at step one and determined that he had not engaged in substantial gainful activity between the alleged onset date and the date of the opinion. Tr. 12; *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Plaintiff claimed prevented him from working. Tr. 12-13; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ found that Plaintiff's left shoulder surgery, obesity, depression, and anxiety were severe impairments. Tr. 12-13. The ALJ also discussed Plaintiff's glaucoma and its treatment, including management of his symptoms with "topical medication and over the counter pain medication." Tr. 13. The ALJ determined that Plaintiff's glaucoma was not a severe impairment because "while the claimant indicated that his eyes are intermittently blurry and he has headaches, there is no indication that his glaucoma causes any limitations." *Id*.

At step three, the ALJ determined that Plaintiff's physical and mental impairments did not meet or medically equal the criteria of any listings. Tr. 13-15; *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Hays*, 907 F.2d at 1456-58. The ALJ identified and considered Listings 1.02B (major dysfunction of an upper extremity joint), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). Because obesity is not a listed impairment, the ALJ considered Plaintiff's obesity under Social Security Ruling ("SSR") 02-1p.

With respect to Plaintiff's physical impairments, the ALJ noted that the evidence showed that Plaintiff's obesity did not increase his psychological symptoms and that he "had a normal gait and [did] not require an assistive device." Tr. 13-14. Therefore, the ALJ concluded that Plaintiff's obesity was not of "such severity as found in any listing." *Id*. With respect to Listing 1.02B, the ALJ explained that Plaintiff had not met the listing's requirement of showing an

"inability to perform fine and gross movements effectively" because he "was noted as having 5/5 handgrip strength in both hands." Tr. 13; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.02B.

Regarding Plaintiff's mental impairments, the ALJ considered his mental functioning as required by the regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The technique requires analysis of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00(A), (G). A claimant's impairments meet Listings 12.04 and 12.06 by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A)(2). Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). An ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). A claimant must show extreme limitation in one area, or marked limitation in two areas, to be deemed to have met the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B).

Here, the ALJ assigned a rating to the paragraph B criteria, citing substantial evidence in the record, and found that Plaintiff had a mild limitation in the area of concentration, persistence, or pace, and a moderate limitation in the other three functional areas. Tr. 14-15. The ALJ also found that the record lacked evidence showing that the paragraph C criteria had been met. Tr. 15. Therefore, the ALJ concluded that Plaintiff's mental impairments did not meet Listings 12.04 or 12.06. *Id.*

Before continuing to step four, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") by assessing the extent to which his impairments limited his ability to work. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When performing an RFC assessment, an ALJ is tasked with considering all relevant evidence, including a claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2; *see also* 20 C.F.R. §§ 404.1529, 404.1545.

Here, the ALJ summarized Plaintiff's subjective statements and testimony, treatment records, and medical opinions. Tr. 16-22. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that his testimony as to the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 17; *see*

*Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints).

The ALJ found that "[Plaintiff's] limitations [did] not generally affect his ability to complete activities of daily living." Tr. 19. The ALJ cited to Plaintiff's own reports to contradict his allegations of his symptoms' severity, including his ability to do laundry weekly, apply for jobs, and travel out of state for his birthday and a cookout. Tr. 19; *see also* Tr. 263-64 (Plaintiff's self-report of his function, noting no problems with personal care, ability to prepare simple meals like oatmeal and cereal, and that he did not do house or yard work because of his patience level and not wanting to "mix wrong chemicals").

The ALJ reviewed the medical evidence, beginning with Plaintiff's left shoulder surgery, recovery, and subsequent limitations. Tr. 17. The ALJ summarized his treatment records and concluded that "[his] recent left shoulder surgery and documented limited range of motion in his left arm supports a light [RFC] including occasional overhead, lateral, and frontal reaching with his left arm and the inability to climb using ladders, ropes, and scaffolds." *Id*. The ALJ discussed Plaintiff's obesity and explained that he included in the RFC "restrictions on climbing, kneeling, crouching, crawling, balancing and stooping" to accommodate his obesity. Tr. 17-18.

The ALJ also discussed Plaintiff's treatment for depression and anxiety. Tr. 18. The ALJ noted that Plaintiff "consistently presented with a depressed or anxious mood," but that "he was generally noted as being cooperative and having a logical thought process" and "having cognition, insight, and judgment within normal limits, and average intelligence." *Id*. The ALJ noted that Plaintiff experienced "intermittent anxiety attacks triggered by high stress environments." *Id*. The ALJ explained that the RFC accommodated Plaintiff's depression and anxiety by limiting him to "unskilled, routine, and repetitive tasks, involving only simple work-related decisions, and only occasional changes in routine work setting." *Id*. The ALJ found that normal breaks would accommodate Plaintiff's time off task, and that he was "limited to only occasional interaction with supervisors, coworkers, and the public" due to his history of workplace conflict. *Id*.

Finally, the ALJ assigned weight to the opinions rendered by examining and non-examining medical sources. Regarding Plaintiff's physical impairments, the ALJ gave little weight to the State agency consultant's opinion at the initial level that Plaintiff did not have any severe impairments. Tr. 19. The ALJ gave partial weight to the State agency consultant's opinion on reconsideration that Plaintiff's "continuing recovery from his left shoulder surgery support[ed] a limitation to light work and a limitation in reaching, with his left side, in front and/or laterally, and overhead." *Id*. The ALJ gave little weight to a Social Services case manager's opinion that Plaintiff had "no restrictions" in his ability to sit, stand, walk, bend, and squat because "his obesity would affect his ability to bend and squat." *Id*. The ALJ gave little weight to the opinion of consultative examiner, Dr. Charles T. Weng, that Plaintiff "was able to sit, communicate, walk, and use both arms and hands for grasping, pulling, [and] lifting" because the opinion did not address "the frequency at which the claimant [could] perform these exertional

activities" or "the claimant's left shoulder surgery and pain that limit his overhead, lateral, and frontal reaching ability." Tr. 20.

Regarding the opinion evidence of Plaintiff's mental impairments, the ALJ gave partial weight to the November 2016 State agency consultant's opinion that Plaintiff had no limitation in understanding and memory, and moderate limitation in sustaining concentration, and that Plaintiff had symptoms of bipolar disorder. *Id*. The ALJ found that the record supported "moderate limitations in memory and understanding and adaptation, but only mild limitations in concentration, persistence and pace," and did not support a diagnosis of bipolar disorder. *Id*. The ALJ gave partial weight to the January 2017 State agency consultant's opinion that Plaintiff could understand and retain simple instructions, and "complete simple tasks for an eight-hour period at an appropriate pace, and sustain this level across days and weeks," and "cooperate on simple, routine tasks and transactions and [could] adapt to most changes and task demands on a sustained basis." *Id*. The ALJ "disagree[d] that [Plaintiff] ha[d] moderate limitations in concentration, pace, and persistence," but agreed that he could "perform unskilled, routine and repetitive tasks, involving only simple, work-related decisions, with occasional changes in his routine work setting." *Id*. The ALJ gave little weight to the August 2017 State agency consultant's opinion on reconsideration that Plaintiff's depression and anxiety were not severe impairments because the "opinion [was] inconsistent with the medical evidence of record." *Id*.

The ALJ also appropriately considered and explained the evaluation of Plaintiff's treating physicians' opinions. The ALJ discussed the opinions of Dr. Hardik Yadav, M.D. that Plaintiff was markedly limited in several areas of mental functioning, including remembering locations and work-like procedures, performing activities within a schedule, maintaining regular attendance, and appropriately responding to changes in the work setting. Tr. 21. The ALJ gave Dr. Yadav's opinion partial weight because it was "not supported by the record evidence, which shows no serious limitation in the claimant's ability to perform the aforementioned tasks on a sustained basis." Tr. 21. The ALJ gave partial weight to the GAF scores assigned to Plaintiff by Dr. Yadav and his psychologist, Dr. Boatman, because "although these scores are within the mild range, the claimant still complains of intermittent panic attacks." Tr. 20-21.

The ALJ concluded his RFC discussion with a summary of Plaintiff's impairments and the assessed RFC limitations to accommodate them:

> In sum, the claimant testified to a range of activities and symptoms with the limitations adopted herein. His recent left shoulder surgery and limited range of motion on his left side is accounted for by a limitation to light work and frequent climbing, except never using ladders, ropes, or scaffolds and the limitation on vibrations. In addition, the claimant's consistently documented BMI over 30 is also accounted for by a limitation to a light exertional level, and the postural restrictions and restrictions on hazards. Furthermore, the claimant's intermittent anxiety attacks and consistent symptoms of anxiety and depression are accounted for in the limitation to unskilled, routine, and repetitive tasks, involving only simple work-related decisions, with only occasional changes in the routine work

> setting. The claimant's history of conflict in the workplace with supervisors and coworkers is accounted for in the limitation to occasional interactions with supervisors, coworkers, and the public. Moreover, the claimant's occasional difficulty concentrating due to his anxiety is accounted for by a limitation to normal breaks to accommodate the time he would be off task during a workday.

Tr. 22. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find that the ALJ supported the RFC determination with substantial evidence.

At steps four and five, the ALJ, relying on the vocational expert's (VE's") testimony, determined that Plaintiff was unable to perform his past relevant work of material handler or electrician apprentice. Tr. 22; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). However, in accordance with the VE's testimony, the ALJ determined that a person with Plaintiff's RFC could perform a restricted range of light jobs existing in significant numbers in the national economy, including routing clerk, ticket taker, and marker II. Tr. 22-23, 66; U.S. Dep't of Labor, *Dictionary of Occupational Titles* §§ 222.687-022, 344.667-010, 920.687-126 (4th ed. 1991). Because the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, he appropriately concluded that Plaintiff was not disabled under Social Security law. Tr. 23; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 16, is GRANTED, and the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge